## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KURT ZEGLEN,                            :
                                        :
          **Plaintiff,**          :
  **v.**                            :  **3:14-CV-00173**
                                        :  **(JUDGE MARIANI)**
NORTHWESTERN MUTUAL LIFE                :
INSURANCE CO.,                          :
                                        :
          **Defendant.**          :

## MEMORANDUM OPINION

### I.   Introduction

Plaintiff Kurt Zeglen ("Zeglen" or "Plaintiff") filed a four-count Complaint (Doc. 2)

against Defendant Northwestern Mutual Life Insurance Company ("Northwestern" or

"Defendant"), alleging breach of contract (Count I), "breach of the covenant of utmost fair

dealing" (Count II), bad faith pursuant to 42 Pa. C.S.A. § 8371 (Count III), and violation of

the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S.A. §§

201-1, *et. seq.*, (Count IV).  Presently before the Court is Northwestern's Motion to Dismiss

Counts II and IV (Doc. 6).  For the reasons that follow, the Court shall grant Northwestern's

Motion and dismiss Counts II and IV.

### II.   Factual Allegations

On October 21, 1988 and September 22, 1998, Northwestern issued Zeglen

disability insurance policies.  (Compl. at ¶¶ 3, 6).  Zeglen, a licensed physician and board

certified radiologist, became "disabled under the terms of the policy as he is unable to

perform his duties as a radiologist[.]"  (*Id*. at ¶¶ 20, 24, 50).  On March 18, 2012, "Dr. Zeglen

made a request for disability benefits asserting he last worked on March 22, 2011."  (*Id*. at

¶ 25).

> In submitting his request for disability benefits, Dr. Zeglen indicated that there
> were 'multiple disabilities' and identified those to include the following: left
> above knee amputation; limited range of motion and use of left arm; aortic
> valve replacement, hypertension, cardiac arrhythmia; depression with
> associated anxiety and panic attacks; short term memory loss; right carpal
> tunnel syndrome; gastro-esophageal reflex disease; and hiatal hernia.

(*Id*.).

On August 28, 2012, Northwestern sent Zeglen a letter approving his claim for the

period between February 16, 2012 to May 30, 2012.  (*Id*. at ¶¶ 31-32).  The August 28,

2012 letter indicated that Northwestern's consulting psychiatrist determined Zeglen's

condition had improved to the point that his "symptoms were not rising to the level that they

would be limiting [him] from work activity."  (*Id*. at ¶ 33)  The letter went on to state that

Northwestern would continue to make payments beyond May 30, 2012, subject to

"additional information in order to obtain a thorough understanding of Dr. Zeglen's reported

symptoms and limitations."  (*Id*. at ¶ 35).

"Despite having previously advised in its August 28, 2012 letter that it would make

disability payments beyond May 30, 2012," Northwestern subsequently ceased issuing

benefits.  (*Id*. at ¶¶ 34-35).  On November 29, 2012, Northwestern sent Zeglen a letter

stating, "[I]f Dr. Zeglen is willing to participate in the evaluative medical examinations that

we are requesting, we will provide benefits on an accommodation basis until we receive the

reports from the examiners, which will allow us to continue our review of his request for disability benefits." (*Id.* at ¶ 36). In accordance with the November 29, 2012 letter, Plaintiff underwent examinations scheduled by Defendant. (*Id.* at ¶¶ 37, 39). As agreed, Northwestern issued Zeglen payments for "disability benefits from June 30, 2012 and stated[,] in a letter dated January 9, 2013[,] that it was 'willing to make a payment on an accommodation basis while the review continues.'" (*Id.* at ¶ 38).

"On March 8, 2013 and April 4, 2013, Defendant acknowledged that it had not yet completed its review." (*Id.* at ¶ 41A[1]). "Despite having agreed to make a payment during the review period, Defendant issued no payment to the Plaintiff in March 2013." (*Id.* at ¶ 40B). "On March 18, 2013, Defendant sent a letter stating that it was declining the request of the Plaintiff for copies of the reports of Dr. Morgan and/or Dr. Fischbein," the doctors who examined Zeglen in accordance with November 29, 2012 letter. (*Id.* at ¶¶ 37, 39, 41). The letter also stated Defendant would share the reports with Plaintiff's treating physician but only on the condition that his doctor not release the report to Plaintiff without Defendant's authorization. (*Id.* at ¶ 42). Northwestern has "continued to refuse to allow the release of the reports of Dr. Morgan and/or Dr. Fischbein[.]" (*Id.* at ¶ 45).

On November 3, 2013, Northwestern determined that Dr. Zeglen was not disabled beyond May 30, 2012 and denied Plaintiff's internal appeal of its decision. (*Id.* at ¶ 49).

---

[1] The Complaint contains a typographical error. There are two sets of Paragraphs 40 and 41. The Court will refer to the first set of Paragraphs 40 and 41 as Paragraph 40A and 41A. Accordingly, the second set will be designated Paragraph 40B and 41B.

## III.    Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

The plaintiff must aver "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not

4

entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations, alterations, and quotation marks omitted). This "plausibility" determination will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.   Analysis

### A. "Breach of the Covenant of Utmost Fair Dealing" (Count II)

Count II of the Complaint alleges that Northwestern's actions "constituted a breach of the covenant of the utmost fair dealing inherent in insurance contracts." (*Id.* at ¶ 56). Northwestern seeks to dismiss Count II on the ground that "Pennsylvania law does not provide a separate and independent cause of action for breach of the duty of good faith and fair dealing." (Br. in Supp., Doc. 6, at 4).

"There are two separate 'bad faith' claims that an insured can bring against an insurer: a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim under 42 Pa. Cons. Stat. Ann. Section 8371." *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 529 (E.D. Pa. 2013). Here, Zeglen alleges both, as well as a separate breach of contract claim. (Compl. at ¶¶ 52-60). "In Pennsylvania, the

5

common law duty of good faith and fair dealing is implied in every contract." *Tubman*, 943 F. Supp. 2d at 529. "Pennsylvania Courts have consistently held" that where parties bring breach of contract claims and a common law bad faith claims simultaneously the "bad faith claim sounding in contract is subsumed within [the] breach of contract claim." *Fingles v. Cont'l Cas. Co.*, CIV.A.08-05943, 2010 WL 1718289, at *3 (E.D. Pa. Apr. 28, 2010) (collecting cases).

Following this case law, Count II (breach of the implied covenant of good faith) of the Complaint will be subsumed into Count I (breach of contract). Thus, the Court will dismiss Court II with prejudice.

### B. Unfair Trade Practices and Consumer Protection Law (Count IV)

Count IV of the Complaint alleges that Northwestern violated the UTPCPL. (¶¶ 61-63). Northwestern asserts that the Complaint "alleges nothing more than failure to pay a disability insurance claim, non-feasance, which is not actionable under the UTPCPL." (Br. in Supp. at 5-7). Defendant also contends Plaintiff's UTPCPL claim must be dismissed under the economic loss doctrine. (*Id.* at 7). Because Count IV is barred by the economic loss doctrine, the Court need not consider whether the Complaint alleges misfeasance, rather than mere non-feasance.

Under Pennsylvania law, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995). Although

6

the Pennsylvania Supreme Court has not considered whether the economic loss doctrine

applies to UTPCPL claims, *see Gadley v. Ellis*, CIV.A. 3:13-17, 2014 WL 3696209, at *4

(W.D. Pa. July 23, 2014); the Third Circuit has predicted that the doctrine applies to

UTPCPL claims, *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680-81 (3d Cir. 2002).

"The *Werwinski* decision has generated considerable criticism." *Gadley*, WL

3696209, at *4 (citing *O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266, 275 (E.D. Pa.

2003) (engaging in a lengthy critique of *Werwinski* and declining to adopt the Third Circuit's

reasoning); *Martin v. Ford Motor Co.*, 765 F.Supp.2d 673, 685 n.8 ("Since the Third Circuit

decided *Werwinski*, numerous courts have recognized its reasoning may be inconsistent

with Pennsylvania law.") (collecting cases)).  Despite this criticism, "a district court 'is bound

by a Third Circuit decision where that court has predicted how the Pennsylvania Supreme

Court will decide an issue.'" *Gadley*, WL 3696209, at *5 (quoting *Martin*, 765 F.Supp.2d at

685 n. 8).  As a result, *Werwinski* binds this Court.  *See Tubman*, 943 F. Supp. 2d at 531

("Despite disagreement following *Werwinski*, it remains the controlling law unless revisited

by the Pennsylvania Supreme Court.").

Courts have applied *Werwinski* in UTPCPL claims where allegedly deceptive

conduct "is clearly interwoven with" an insurance contract.  *Id*. at 530-31 (internal quotation

marks omitted); *Sicherman v. Nationwide Life Ins. Co.*, No. 11–7227, 2012 WL 1122737, at

*4 (E.D. Pa. Apr. 4, 2012) (dismissing a UTPCPL claim where a woman's claim that an

insurance company deceived her late husband into letting his life insurance policy lapse

was critically related to the alleged breach). Here, Zeglen's UTPCPL claim is clearly interwoven with his insurance contract. (*See* Compl. at ¶ 63). Plaintiff does not allege that he suffered damages aside from those arising from the insurance agreement. (*Id.*).[2]

Thus, the economic loss doctrine bars Count IV, and the Court will dismiss it with prejudice.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion and dismiss Counts II and IV with prejudice. A separate Order follows.

Robert D. Mariani
United States District Judge

---

[2] Zeglen's brief only devotes a paragraph to addressing Northwestern's economic loss argument, arguing

The case law cited by Defendant to dismiss on the basis of the economic doctrine is not controlling. The *Werwinski* decision dealt with the lease of a vehicle. The *Tubman* decision is an out of district decision and it is respectfully submitted that more weight should be given to the *Zaloga* decision cited above.

(Br. in Opp. at 13-14).

As stated above, *Werwinski* is controlling. *Tubman*, 943 F. Supp. 2d at 531. *Zaloga* does not discuss economic loss, and *Tubman* reflects current Third Circuit precedent.